UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>        Plaintiff,<br><br>   v.<br><br>JAMES WAYNE HOWARD,<br><br>        Defendant. | Case No. 15-cr-00272-VC-1<br><br>**ORDER GRANTING MOTION TO SUPPRESS**<br><br>Re: Dkt. No. 10 |

In this case, a highway patrol officer announced he was going to search a suspect's backpack. That search would have violated the Fourth Amendment, because the officer did not have a warrant to search the backpack, and no exception to the warrant requirement applied at the time the officer made his announcement. In response to the officer's threat, the suspect confessed to being a felon and having a gun in the backpack. The government has now charged him with being a felon in possession of a firearm. But the government may not use in court evidence that an officer obtains through a threat to violate the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 462–63 (2011); *United States v. Saafir*, 754 F.3d 262, 266 (4th Cir. 2014). Therefore, the evidence the officer obtained as a result of his threat (specifically, the confession and the gun) must be suppressed.

### I.

On October 11, 2014, California Highway Patrol Officer Cyril Ruffin stopped the defendant, James Howard, for speeding and driving recklessly on his motorcycle. Although the dialogue between Ruffin and Howard was rather strange, there is no material dispute about what was said or done, because most of the encounter was captured by the patrol car's dashboard

recording system.

After Ruffin checked Howard's identification, he began to inquire whether Howard had been driving under the influence. He said to Howard, "it reeks like marijuana, and you look like you're high." Howard initially responded that he did not have marijuana, that the smell might be coming from his clothes, and that his eyes were red because he'd been crying after receiving bad news about his father's health. Ruffin then initiated a field sobriety test, holding his finger up and asking Howard to follow the finger with his eyes. Howard stated that it was too bright, which Ruffin found evasive because the sun was behind Howard.

Based on what had transpired so far, Ruffin decided to perform what he calls a "probable cause search." He told Howard to get off his bike and to put his backpack on the ground. Ruffin then handcuffed Howard. As he was doing that, he told Howard: "Put your arms back. Relax your hands. You're not under arrest or anything as of this moment, okay?" Howard said, "I know." Ruffin responded: "Well you don't know that, 'cause I can take you to jail right now for driving recklessly. I'm saying that you're not under arrest right now. And that's the only reason why you're not." Ruffin then frisked Howard and went through his pockets.

Then Ruffin resumed his questions about marijuana, asking Howard how much of it he had in his backpack. Howard responded, "I have a, uh, the only thing I have is an electric cigarette, man." Howard then told Ruffin that he had a "cannabis marijuana card" in his wallet (by which he meant a card authorizing him under California law to use cannabis for medical purposes). Howard did indeed have a cannabis card in his wallet.

Ruffin then told Howard to "go ahead and face the patrol car for me." Howard responded, "uh, is there any way that I could have a lawyer?" Ruffin stated: "Nope. Go ahead and face the patrol car there. We're not gonna call a lawyer out and have him come stand with you on the side of the road. Separate your feet. You're not under arrest either." Ruffin told Howard he was merely checking to make sure Howard did not have "a ton of marijuana" on him, that is, "more marijuana than [he was] supposed to have." Ruffin continued:

> And then if you'll allow me to, I'll conduct a driving under the

>influence investigation. And if you don't have too much marijuana, and if you're not under the influence, then you'll be free to go, and I might not even write you a ticket. That's how it usually works out. . . . So I want you to be able to move around if you need to. But I just want you to take a seat right there on the headlight of the patrol car.

Ruffin then told Howard he was going to search his backpack. This caused Howard to become agitated and to say, "you might as well just put me in your car." After some further dialogue, Ruffin asked, "what's inside your backpack, man?" Howard responded: "I'm a fucking felon. I don't know what to tell you man. . . . The only one I ever owned! . . . I don't have any other weapons on me." Howard then claimed he was just "going to sell" the gun, and noted that it was wrapped up in a package.

At this point, Ruffin advised Howard of his *Miranda* rights, and then Howard repeated what had already become clear from the conversation: he was a convicted felon and had a gun in his backpack. Ruffin searched the backpack and, after locating the package described by Howard and cutting through several layers of wrapping, retrieved the gun. And after confirming with dispatch that Howard was indeed a convicted felon, Ruffin arrested him. The United States Attorney's Office has now charged Howard with being a felon in possession of a firearm, and Howard moves to suppress his incriminating statements, as well as the gun, as the fruits of a Fourth Amendment violation by Ruffin.

## II.

The Fourth Amendment protects against unreasonable searches and seizures. The default rule is that when a law enforcement officer searches a person or that person's property for evidence of criminal wrongdoing, the search is "unreasonable" unless the officer has a warrant. *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). But there are a number of exceptions to that default rule. The question is whether any of those exceptions applied when Ruffin announced he was going to search Howard's backpack. If not, Ruffin's announcement was a threat to violate the Fourth Amendment, which, as discussed in the next section, would require suppression of any evidence discovered as a result of the threat.

At the outset, it bears emphasizing that Ruffin announced he would search the backpack

early in the traffic stop, even though he didn't perform the search until later. At the time Ruffin told Howard he was going to search the backpack (while instructing Howard to sit handcuffed on the patrol car), Howard had said nothing about being a felon or having a gun. The evidence Ruffin possessed of potential criminal activity at that point was Howard's erratic driving, the marijuana smell, the droopy eyes, and Howard's statement that the backpack contained a marijuana e-cigarette. As the government acknowledges, Howard confessed to having a gun in the backpack only "upon knowing that the officer would check his bag for marijuana." Opp. at 14. The precise question, therefore, is whether the evidence that Howard was driving recklessly and under the influence gave Ruffin the authority to search Howard's backpack for marijuana without a warrant.

Ruffin himself seems to think the search was justified pursuant to a "probable cause" exception to the warrant requirement. In his declaration, which the government filed with its opposition to the motion to suppress, Ruffin states that when he went through Howard's pockets, he was performing a "probable cause search" based on his belief that Howard possessed marijuana and had been driving under the influence. In light of the dialogue that ensued between Ruffin and Howard, as well as Ruffin's comments in his arrest report, it seems Ruffin believed he had the authority to conduct a "probable cause search" of the backpack too. The government tepidly asserted a version of this argument in its papers, but abandoned it by the time of the hearing. And with good reason: probable cause is not itself an exception to the warrant requirement. Even if an officer has probable cause to believe that a bag (or a box, or a house) contains evidence of criminal activity, he must get a warrant before searching it unless one of the actual exceptions to the warrant requirement applies. *See Riley*, 134 S. Ct. at 2486; *United States v. Chadwick*, 433 U.S. 1, 11–13 (1977), *abrogated on other grounds by California v. Acevedo*, 500 U.S. 565 (1991). The Fourth Amendment says no warrant shall issue *without* probable cause. It does not say a search warrant is unnecessary when there *is* probable cause.

The only other exception to the warrant requirement the government asserts is the "search incident to arrest" exception. That exception applies when an officer is taking a suspect into

4

custody. The officer may, in conjunction with the custodial arrest, conduct a warrantless search of the arrestee, and of areas within the arrestee's immediate control, to protect officer safety and to prevent evidence from being lost. *See Riley*, 134 S. Ct. at 2483–85; *United States v. Camou*, 773 F.3d 932, 937–38 (9th Cir. 2014). But in this case, Ruffin was not taking Howard into custody when he announced he would search the backpack. To the contrary, Ruffin told Howard no fewer than three times, before announcing that he was searching the backpack, that Howard was *not* under arrest. Indeed, when Howard asked for a lawyer, Ruffin denied the request by reminding him that he was not under arrest. In light of these circumstances, the "search incident to arrest" exception cannot apply.

The government cites various cases in which courts have applied the "search incident to arrest" exception even where the justifications underlying the exception were only tangentially present (if at all). For example, in cases where officers have already arrested and obtained complete control over a defendant, thereby eliminating the possibility the defendant could access the property in a way that threatens officer safety or risks the destruction of evidence, courts have invoked the "search incident to arrest" exception to uphold warrantless searches of property. *See, e.g.*, *United States v. McLaughlin*, 170 F.3d 889, 892 (9th Cir. 1999); *United States v. Hudson*, 100 F.3d 1409, 1419–20 (9th Cir. 1996). And in cases where the officer had not yet formally arrested the defendant, courts have upheld searches immediately preceding the arrest, as long as the arrest "is supported by probable cause independent of the fruits of the search." *United States v. Smith*, 389 F.3d 944, 951 (9th Cir. 2004) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980)). Taken together, these cases stand for the proposition that if the arrest and the search are "roughly contemporaneous," *McLaughlin*, 170 F.3d at 892, courts will conclude that the search is indeed "incident" to the arrest, without conducting a probing inquiry into whether that particular search was needed to protect officer safety or preserve evidence. In other words, notwithstanding the doctrinal justifications of officer safety and evidence preservation, in a particular case the exception will apply so long as the officer had probable cause to arrest the defendant before the search was made, and so long as the arrest and search are

5

not "so separated in time *or by intervening acts* that the latter cannot be said to have been incident to the former."  *Id.* at 893 (emphasis added) (quoting *United States v. Abdul-Saboor*, 85 F.3d 664, 668 (D.C. Cir. 1982)).

These cases might be helpful to the government if Ruffin had probable cause to arrest Howard for being a felon in possession of a firearm *before* threatening to search the backpack. But he did not.  Or, these cases might be helpful if the search was part of an integrated series of events designed to culminate in Howard's arrest for a driving-related offense.  But as Ruffin told Howard repeatedly, he was not arresting him for the driving-related offenses.  Indeed, if in fact Ruffin was (contrary to his statements) in the process of arresting Howard at the time he handcuffed him, it would have been a clear *Miranda* violation to continue questioning Howard without advising him of his rights, particularly after Howard had requested a lawyer.  It is therefore clear from the record that Ruffin's decision to arrest Howard did not occur until later, when he did in fact advise Howard of his rights.  And Ruffin made this decision to arrest Howard and advise him of his rights because Howard blurted out a confession to being a felon in possession of a firearm.  In other words, Howard's confession was an "intervening act" that took place after Ruffin threatened the search of the backpack but before he decided to arrest Howard. This "intervening act" separated the threat to search the backpack from the decision to arrest Howard.  And when Ruffin threatened to search the backpack, he did not have independent probable cause to believe it contained evidence of the crime that ultimately prompted Ruffin to arrest Howard.  Therefore, "the [search] cannot be said to have been incident to the [arrest]." *McLaughlin,* 170 F.3d at 893 (quoting *Abdul-Saboor*, 85 F.3d at 668).

## III.

Accordingly, when Ruffin told Howard he was going to search the backpack, he was announcing that he was about to commit a Fourth Amendment violation.  This announcement, as the government acknowledges, caused Howard to blurt out significant incriminating information, namely, that he had a gun in the backpack and that he was a convicted felon.  And although the government argues that *this* information gave Ruffin the authority to search the backpack

6

without a warrant (again, as a search incident to arrest for being a felon in possession of a firearm), that is wrong, because the government may not use in court evidence or incriminating statements that officers obtain by violating the Fourth Amendment or by threatening to violate the Fourth Amendment.

The Supreme Court most recently discussed this concept in *Kentucky v. King*, 563 U.S. 452 (2011).  There, the Court considered a different exception to the warrant requirement, namely, the exception for exigent circumstances.  The Court upheld the search in that case, but in doing so explained that the "exigent circumstances" exception would not apply in a case where an officer created the exigency in the first place, by threatening to engage in conduct that violates the Fourth Amendment:

> Where, as here, the police did not create the exigency by engaging or threatening to engage in conduct that violates the Fourth Amendment, warrantless entry to prevent the destruction of evidence is reasonable and thus allowed.

*Id.* at 462.  And the Court continued by explaining that this principle does not merely apply to the "exigent circumstances" exception:

> We have taken a similar approach in other cases involving other warrantless searches.  For example, we have held that law enforcement officers may seize evidence in plain view, provided that they have not violated the Fourth Amendment in arriving at the spot from which the observation of the evidence is made. . . .
>
> Similarly, officers may seek consent-based encounters if they are lawfully present in the place where the consensual encounter occurs.

*Id*. at 462–63.

The Fourth Circuit has applied this principle to an encounter quite similar to the one between Ruffin and Howard.  In *United States v. Saafir*, 754 F.3d 262 (4th Cir. 2014), an officer pulled over a motorist but, during the initial part of the encounter, did not have probable cause to search the car.  The officer then announced (incorrectly) that the presence of a flask in the car gave him probable cause to search the car.  This prompted the driver to tell the officer that there might be a gun in the vehicle.  The officer then searched the vehicle and found a gun, and the

7

driver was charged with being a felon in possession of a firearm.  The Fourth Circuit ruled that the driver's statement and the gun found in the car must be suppressed, because they were the fruits of a threat by the officer to violate the Fourth Amendment:

> We hold that the officer's assertion that the existence of the hip flask provided him with probable cause to search the car was an independent, antecedent threat to violate the Fourth Amendment that ultimately fatally taints the search of the car and the seizure of the gun.
> . . . .
> [J]ust as an officer may not manufacture exigent circumstances to justify a warrantless search by means that run afoul of the Fourth Amendment, an officer may not manufacture probable cause by unlawful means, including by way of a false claim of legal authority that constitutes a threat to violate the Fourth Amendment.  *See United States v. Guzman*, 739 F.3d 241, 247 (5th Cir. 2014).

*Id.* at 266.

The Fourth Circuit's reasoning is persuasive, and it applies here.  Howard's admission that he had a gun in the backpack was prompted by Ruffin's statement that he would initiate an unlawful search of the backpack, so the government may not rely on Howard's admission.  And because the only arguable authority to search the backpack without a warrant came from the unlawfully-obtained statements, the government may not rely on the gun found in the backpack either.[1]

## IV.

As mentioned at the outset, the dialogue between Ruffin and Howard on the side of the

---

[1] In his motion to suppress, Howard made an alternative argument, namely, that even if Ruffin hadn't violated the Fourth Amendment, he obtained Howard's confession through a *Miranda* violation by failing to advise Howard of his rights when he handcuffed Howard and made him sit on the front of the patrol car.  In response, the government argued that even if Ruffin obtained Howard's confession in violation of *Miranda*, the gun should not be suppressed because it inevitably would have been discovered.  The government did not argue that the "inevitable discovery" doctrine would apply if suppression were required due to a Fourth Amendment violation rather than a *Miranda* violation.  Therefore, this argument is waived.  But even if it were not waived, there is no plausible argument that the gun would have been discovered absent Ruffin's threat to search Howard's backpack.  Given Ruffin's repeated statements that he was not arresting Howard for the driving offenses, the government has no argument that Ruffin would have found the gun in a search of the backpack incident to an arrest for the driving offenses.  Any contention that the gun would have been discovered during an inventory search subsequent to an arrest for a driving offense would be unpersuasive for the same reason.

road had a certain unreality to it.  A number of times, Ruffin seemed to go out of his way to tell Howard that he was not under arrest — even when Howard was in handcuffs and would not likely have believed he was free to terminate the encounter.  Why did Ruffin go to such great lengths to communicate this message to Howard, notwithstanding the reality of the situation?

Although we don't know for sure what was going through Ruffin's mind, the answer is likely that he was following his training.  California law enforcement agencies apparently train their officers to tell suspects that they are not under arrest, on the theory that these magic words allow officers to keep questioning suspects without advising them of their *Miranda* rights, even if it is otherwise obvious that the suspects are in custody and therefore entitled to *Miranda*'s protective admonitions.  *See, e.g.*, *Smith v. Clark*, 612 F. App'x 418, 424 (9th Cir. 2015) (unpublished) (Watford, J., concurring).

Why, in turn, do law enforcement agencies train their officers to circumvent *Miranda* in this way?  Apparently it is based on a series of court decisions that give "essentially dispositive weight" to these magic words, immunizing the government from adverse *Miranda* rulings in cases where the suspect cannot possibly have felt free to leave.  *Id.* at 423; *see also Smith v. Clark*, 804 F.3d 983, 986–87 (9th Cir. 2015) (W. Fletcher, J., dissenting from denial of rehearing en banc).  In other words, law enforcement agencies train officers to work their way around *Miranda* because courts have signed off on the workaround.

In some cases, perhaps this practice helps officers obtain evidence when a suspect would otherwise clam up.  But if Ruffin was following this practice here, it backfired.  Because Ruffin made clear he was not in the process of arresting Howard when he announced he was going to search the backpack, Howard's statements following that announcement, and the gun found in the backpack, must be suppressed.

**IT IS SO ORDERED.**

Dated: January 8, 2016

_____
VINCE CHHABRIA
United States District Judge